William B. ANDERSON and Lisa A. Anderson, Plaintiffs–Appellants,

v.

INLAND PAPERBOARD AND PACKAGING, INC., Defendant–Appellee.

No. 99–6608.

United States Court of Appeals, Sixth Circuit.

April 4, 2001.

Before COLE and GILMAN, Circuit Judges; and BORMAN, District Judge.*

OPINION

GILMAN, Circuit Judge.

William and Lisa Anderson, two employees of Inland Paperboard and Packaging, Inc., were terminated because the injuries they sustained in a motorcycle accident prevented them from performing their jobs. The Andersons filed suit under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112. After both the Andersons and Inland filed motions for summary judgment, the district court granted summary judgment for Inland and denied the Andersons' motion. For the reasons set forth below, we AFFIRM the judgment of the district court.

## I. BACKGROUND

### A. Factual background

William and Lisa Anderson, a married couple, were both employed by Inland, a manufacturer of corrugated boxes, at its plant in Louisville, Kentucky. William worked as a "slitterman," also called a "knife-man," a job that he held since 1994. As of 1998, there were five employees at the plant, including William, who were qualified to work as slittermen. Inland's slittermen are represented by United Paperworkers International Union Local 1737.

The slitterman's job is to make sure that the corrugator, the machine that produces the sheets of ridged cardboard, is making the correct-sized boards. A slitterman must always be on duty while the corrugator is in operation. Because the corrugator is operational 24 hours a day during the 5–day work week, the slittermen are scheduled in three 8–hour shifts per day.

If one slitterman is unavailable to work his or her shift, another slitterman must work that extra shift as overtime. Usually the hole in the schedule is filled by two slittermen, each working an extra four hours, unless another slitterman can fill the entire eight-hour time slot. Given the necessity of the slittermen being available to work extra hours when needed, mandatory overtime is a part of the collective-bargaining agreement negotiated between the Union and Inland.

Lisa's most recent job at Inland was in the storeroom. Her job entailed inventory maintenance, storeroom maintenance, and updating the computer database. After 1997, this position was no longer within the Union's bargaining unit.

Both William and Lisa are avid motorcyclists. In October of 1996, William, who was driving alone, collided with a van. As a result of this accident, William broke his left leg, crushed his foot, and was hospitalized for six days. On March 10, 1997, William's orthopedic surgeon permitted William to return to work with two limitations: he could not work more than eight hours in one day and he was instructed to avoid excessive standing. Neither of these restrictions prevented William from fulfilling his duties as a slitterman. Although Janet Smith, the Human Resources Manager, expressed concern about the eight-hour restriction, he worked with these limitations for nearly five months until his next motorcycle accident in August of 1997.

On August 7, 1997, less than one year after the accident with the van, both William and Lisa were injured when their motorcycle hit a dog that had run in front of them. William sustained a broken shoulder and burns on one leg. Lisa's

---

* The Honorable Paul D. Borman, United States District Judge for the Eastern District of Michigan, sitting by designation.

multiple injuries from the accident included a strained neck and back muscles, open wounds, burns, bruises, and other contusions. Before either William or Lisa was permitted by their doctor to return to work, the couple met with Smith at the Inland plant in December of 1997. During this meeting, Smith said that William must be "fully released" before he would be allowed to return to work as a slitterman. They also discussed the possibility of other jobs that William could do for Inland, as well as the availability of disability retirement. Neither William nor Lisa requested a new job or sought any other accommodation for their injuries.

On March 2, 1998, William was released by his physician for "light duty" and "no overhead, over shoulder level" movement. Despite this limited release, William was unable to resume his position as a slitterman because his restrictions prevented him from performing the required duties. On June 1, 1998, William was fully released by his physician, with the sole restriction of not being permitted to work longer than eight hours per day. According to Inland, this permanent limitation precluded William from being a slitterman, because it was not possible for him to work extra hours as required by the mandatory overtime provisions of the job. On August 6, 1998, when his leave period ended, William's employment was terminated. Prior to this adverse employment decision. William had never requested that he be given another job at Inland that would accommodate his limitation. Lisa, who was also incapacitated by the August 1997 accident, had not yet been released by her physician at the time her employment with Inland was terminated on February 19, 1998.

### B. Procedural background

On December 31, 1997 and February 9, 1998, William and Lisa respectively received right-to-sue letters from the Equal Employment Opportunity Commission (EEOC), based on the allegation that Inland was refusing to reasonably accommodate their disabilities. They filed suit in the United States District Court for the Western District of Kentucky on March 27, 1998. Inland eventually filed a motion for summary judgment, followed by a cross-motion for summary judgment filed by the Andersons. On October 28, 1999, the district court granted Inland's motion for summary judgment against the Andersons and denied the couple's motion against Inland. The district court reasoned that the Andersons had each failed to produce sufficient proof to establish their respective prima facie cases. William and Lisa then filed a timely notice of appeal. In this appeal, the Andersons argue that they produced sufficient evidence for a rational trier of fact to find that Inland had terminated and otherwise harassed the couple in violation of the ADA.

## II. ANALYSIS

### A. Standard of review

We review de novo the district court's grant of summary judgment. *See, e.g., Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir.2000). Summary judgment is proper when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The judge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue for trial exists only when there is sufficient

"evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505.

B. The district court did not err when it held that William Anderson was not disabled for the purposes of the ADA

The ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to ... discharge of employees, employee compensation ... and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In order to prevail under the ADA, William "must establish (1) that [he] is a disabled person within the meaning of the Act, (2) that [he] is qualified to perform the essential functions of [his] job with or without reasonable accommodation, and (3) that [he] suffered an adverse employment decision because of [his] disability." *McKay v. Toyota Motor Mfg. U.S.A., Inc.*, 110 F.3d 369, 371 (6th Cir. 1997). The district court held that William had failed to produce sufficient evidence for a rational trier of fact to find that he was disabled under the ADA. His first claim on appeal is that the district court was incorrect when it granted summary judgment on this basis. Although William's counsel conceded at oral argument that William was not in fact disabled for the purposes of the ADA (instead contending that he was *regarded as* disabled by Inland), we shall still address why the district court was correct in its conclusion. *See Pusey v. City of Youngstown*, 11 F.3d 652, 658 (6th Cir.1993) (choosing to discussing an issue despite the fact that it was conceded at oral argument).

To be disabled under the ADA, a plaintiff must (1) have an impairment, either physical or mental, and (2) the impairment must substantially limit a major life activity. *See McKay*, 110 F.3d at 372. The requirement that the impairment must substantially limit a major life activity is explained in the Code of Federal Regulations, promulgated by the EEOC. According to the regulations, a person is substantially limited if he or she is

(i) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1).

When deciding if the ADA applies to a particular impairment, "courts should consider the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long term impact, or expected permanent or long term impact, of the impairment." *Penny v. United Parcel Serv.*, 128 F.3d 408, 414 (6th Cir.1997) (citing 29 C.F.R. § 1630.2(j)(1)-(2)). This court has adopted the EEOC standards as the appropriate construction of the ADA. *Id.; but see Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 479–80, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) (expressly declining to address the deference due these regulations).

William argues that because he is considered disabled under the collective bargaining agreement, he should be considered disabled for the purposes of the ADA. This argument is without merit. *See McKay v. Toyota Motor Mfg. U.S.A., Inc.*, 110 F.3d 369, 371 (6th Cir.1997) ("A person seeking relief under the ADA for termination must establish ... that she is a disabled person *within the meaning of the Act* ") (emphasis added).

■ William sustained two injuries that could potentially support a claim that he is disabled for the purposes of the Act: (1)

his damaged foot and leg from the first accident, and (2) his shoulder injury from the second accident. Neither of these impairments, however, is sufficient to allow a rational trier of fact to find him disabled under the ADA.

The first impairment was suggested at one point in William's deposition testimony, when he said that "I can't afford to play sports, I can't jump, I can't run anymore ... my foot does not bend, my midfoot, my toes do not bend." Neither party disputes that William suffered from a physical impairment of his left leg. Nevertheless, the existence of a physical impairment alone is insufficient to support a finding of a disability for the purposes of the ADA. *See McKay,* 110 F.3d at 373 ("[N]ot every impairment qualifies as a disability protected by the ADA."). William is also required to show that a major life activity was substantially limited by his leg injury. The only evidence in the record of life activities that were compromised by this impairment are the previously mentioned running, jumping, and bending limitations, as well as his inability to work more than eight hours a day.

Aside from this single reference to these restricted activities in his deposition, William has proffered no other evidence that his leg and foot movements were so severe as to limit a major life activity. The only activity that seems to be limited is his ability to run and play sports. We have no idea as to the extent to which his running and jumping are major life activities for William, nor is there any indication as to how substantially his participation in sports is affected. A single conclusory statement about an alleged substantial limitation is not enough to avoid summary judgment sought by the employer. *See Penny v. United Parcel Serv.,* 128 F.3d 408, 415 (6th Cir.1997) (holding that a plaintiff's bare allegation of a walking impairment was not sufficient to avoid summary judgment, because the plaintiff's "deposition testimony provides little support for the claim that his impairment rises to the level of a disability").

The only other activity that could possibly be affected by William's limitation is his inability to work more than eight hours a day. The limitation on a plaintiff's ability to work is significant *"only* '[i]f an individual is not substantially limited with respect to *any other* major life activity.'" *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 492, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) (quoting 29 C.F.R. § 1630.2(j)) (emphasis in original). Because there is no evidence in the record of any other compromised major life activities, we may consider William's restriction on working more than eight hours a day.

According to the regulations, a person's ability to work is substantially limited for the purposes of the ADA if he or she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). William produced no evidence to meet this standard. He has not suggested that his inability to work more than eight hours a day prevents him from performing an entire class of jobs or a broad range of jobs in various classes. Rather, all the record indicates is that he is unable to perform the slitterman position with the mandatory overtime. This is not enough of a limitation to constitute a disability under the ADA, because "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i); *compare Burns v. Coca–Cola Enter., Inc.,* 222 F.3d 247, 256 (6th Cir.2000) (holding that the plaintiff's evidence that "his back injury precluded him from performing at least 50% of the jobs previously available to him" was

enough to classify him as disabled under the ADA). Thus, William's major life activity of working was not substantially limited by his injuries.

The second impairment that could potentially support a claim of disability under the ADA is the shoulder injury that William sustained in the second accident. From March through June of 1998, William was released for employment by his physician despite his still-injured shoulder. Although this is a physical impairment, there is insufficient evidence to suggest that any of his major life activities were substantially limited by the injury. As before, there is no evidence that this injury prevented William from performing "a class of jobs" or a "broad range of jobs in various classes." William has therefore failed to establish that any major life activities were substantially limited by his shoulder impairment. *See Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir.1996) (holding that the "question presented is whether he adduced sufficient evidence from which a factfinder reasonably could conclude that the nature and severity of his injury significantly restricted his ability to walk as compared with an average person in the general population").

Accordingly, because William is unable to show that any of his physical impairments rise to the level of a disability under the ADA, he is unable to satisfy the first element of a prima facie case. *See Penny v. United Parcel Serv.*, 128 F.3d 408, 417 (6th Cir.1997) (holding that because the plaintiff was not disabled for the purposes of the ADA, this court need not to address the other elements of the prima facie case).

C. There is insufficient evidence to show that William Anderson was regarded as disabled for the purposes of the ADA

■ At oral argument, William's counsel claimed that William was "regarded as"

disabled by his employer, whether or not he was in fact disabled. This is a category of employees also covered by the ADA. *See* 42 U.S.C. § 12102(2)(C). According to the Supreme Court,

> There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities.

*Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). When a plaintiff claims that he was discriminated against because he was regarded as being disabled by his employer, "we must look to the state of mind of the employer against whom he makes a claim . . . [M]embership in the protected class becomes a question of intent." *Ross v. Campbell Soup Co.*, 237 F.3d 701, 706 (6th Cir.2001). In *Ross,* this court also reiterated that "the employer's motive [ ] is one rarely susceptible to resolution at the summary judgment stage." *Id.* Nevertheless, even an ADA claim involving an employer's perception of the employee will survive summary judgment only if there is sufficient evidence to support a conclusion by a rational trier of fact that the worker was regarded as disabled under the Act. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

Based on the record before us, William is unable to produce any evidence to suggest that Inland regarded him as disabled for the purposes of the ADA. The only evidence that he can point to is that the Inland Human Resources Manager, Janet

Smith, stated in her deposition that he was disabled enough to receive disability benefits provided for in the collective bargaining agreement. A careful reading of her deposition testimony, however, indicates that she was fully cognizant of the definition of disability under the collective bargaining agreement as opposed to being disabled under the ADA. For example, at one point in the deposition, William's attorney asked her: "In general, when I asked you earlier ...the question was, wouldn't the phrase, [ ] 'physical disability was substantiated by medical certification,' [ ] apply to Mr. Anderson. Your former answer was yes. So you still stick with that answer?" Smith replied that "[u]nder the contract it would because he had a limitation but not ADA necessarily." The testimony continued as follows:

Q. Would it be fair to say that you don't know whether his contract disability fits under the ADA, is that correct?

A. Whether I know that or not?

Q. Yes.

A. I believe it doesn't fit under ADA.

Smith was thus aware that an employee might be entitled to disability benefits, but might not have a physical limitation protected by the ADA. This testimony, then, does not prove that William was regarded by Inland as being disabled. To the contrary, it only shows that Inland was aware that he had physical limitations sufficient to qualify for benefits under the collective bargaining agreement. Without more, William's claim of discrimination under the ADA, based on the theory that he was regarded as disabled, must also fail.

D. The district court did not err in holding that Lisa Anderson also failed to establish a prima facie case

■ The second element of a prima facie case under the ADA is the requirement that a plaintiff be able to perform the essential functions of her job. *See McKay*

*v. Toyota Motor Mfg. U.S.A., Inc.*, 110 F.3d 369, 371 (6th Cir.1997). Lisa's doctor, however, had not yet given her permission to return to work when her employment with Inland was terminated in February of 1998. Accordingly, she was unable to perform her duties as a storeroom clerk. This specific issue was addressed in *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir.1998), which held that a disabled plaintiff who "was not released by her doctor to return to work ... has not met the second requirement that she be qualified to perform the essential functions of the job." There is no evidence, then, from which a rational trier of fact could conclude that Lisa satisfied her burden of establishing a prima facie case.

■ At oral argument, Lisa's attorney also claimed that she was subjected to harassment by Inland as a result of her husband's perceived disability. Even assuming (without deciding) that an employer's creation of a hostile work environment because of an employee's disability or perceived disability would be illegal under the ADA, a plaintiff must still establish a prima facie case by adducing sufficient proof of this harassment to survive summary judgment. *See Keever v. City of Middletown*, 145 F.3d 809, 813 (6th Cir.1998) (affirming the dismissal of an ADA harassment claim). Lisa failed to present any such proof. Furthermore, we find no authority to support an ADA claim brought by a spouse of a disabled person alleging that the non-disabled spouse was harassed.

## III. CONCLUSION

For all of the reasons set forth above, we AFFIRM the judgment of the district court.