NOT RECOMMENDED FOR PUBLICATION
File Name: 13a0819n.06

No. 07-5280

FILED
**Sep 09, 2013**
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| DARYL SUE ROBBINS et al., | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| and | ) | STATES DISTRICT COURT FOR THE |
| | ) | MIDDLE DISTRICT OF TENNESSEE |
| JOSEPH W. CHAMBERS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | OPINION |
| | ) | |
| v. | ) | |
| | ) | |
| SATURN CORPORATION, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

_____

**Before: SUHRHEINRICH, GILMAN, and WHITE, Circuit Judges.**

**RONALD LEE GILMAN, Circuit Judge.** This case involves an alleged violation of the Americans with Disabilities Act (ADA) brought by Joseph W. Chambers against his former employer, Saturn Corporation. Chambers claims that, after he suffered work-related injuries, Saturn failed to provide a reasonable accommodation for his disabilities. The district court granted Saturn's motion for summary judgment, finding that Chambers was not "disabled" within the meaning of the ADA. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

## A. Factual background

Chambers was initially employed by Saturn in 1990 as an operation technician in Spring Hill, Tennessee. He worked on Team 2, where he assembled quarter panels for Saturn automobiles. His job functions included pulling panels and fuel-filler doors from the painting station, transporting panels to the sub-assembly area, attaching panels and fuel-filler doors to the cars, and repairing defects. According to Saturn's "fully functional/fully rotational" policy, each worker on the team was required to rotate through and perform each job task.

Chambers sustained work-related injuries in 1993 and 1995. These injuries caused a variety of physical impairments, including pain in his neck, shoulders, arms, and hands. His physicians restricted him from certain work activities, including repetitive lifting or bending, lifting more than 40 pounds, moving cyclically outside of a neutral posture, working with his hands above shoulder level, using power tools, and twisting. Chambers's physical restrictions prevented him from fulfilling the rotational requirements on Team 2.

To accommodate its employees with physical restrictions, Saturn had a "Member Placement Process" (MPP). The MPP was a four-step process whereby Saturn searched for suitable job openings within Saturn for the restricted employees and placed them in those jobs. In addition, Saturn operated the MPP according to the "Guiding Principles," a negotiated document that was incorporated into the Saturn/United Auto Workers collective bargaining agreement. The Guiding Principles and the MPP did not permit Saturn to "bump" a current employee or to violate another employee's collectively bargained seniority rights.

Chambers remained on Team 2 for the first four to six weeks after receiving his initial working restrictions in 1993. Thereafter, Saturn assigned Chambers to a variety of light-duty work

on a temporary basis, including monitoring cars for defects, small-parts work, and computer and clerical work. In 1995, Saturn placed Chambers on the "cockpit" team, a work assignment not defined in the record. Because of his restrictions, however, Chambers could not perform each function required of the cockpit team on a "fully functional/fully rotational" basis. He was therefore placed on medical leave (at Step Four in the MPP) from 1996 to 2005. Chambers did not apply for any positions at Saturn while on medical leave.

In April 2005, Saturn contacted Chambers and returned him to work as an operational technician on the Sports Utility Vehicle cockpit team. By that time, Saturn had instituted the Accommodating Disabled People in Transition (ADAPT) program, the successor program to the MPP. Chambers, however, was once again unable to complete all of the tasks required for the position because of his physical restrictions. He was thus returned to medical leave. But soon thereafter, Saturn designated him as a quality technician on Ion Team D through ADAPT, where he was employed at the time that this appeal was filed in March 2007.

**B.    Procedural history**

In 1997, Chambers joined 76 other current and former Saturn employees in filing a lawsuit against Saturn, alleging that it had discriminated against them in violation of the ADA. The complaint charged that Saturn's employment-placement policy systematically discriminated against physically restricted workers by, among other things, failing to provide reasonable accommodations and requiring the workers to undergo job rotations that included tasks they could not perform. Chambers and the other plaintiffs requested compensatory and punitive damages against Saturn, as

well as injunctive relief. The other 76 plaintiffs' claims were all resolved by October 2006. Only Chambers's claims remain.

After discovery was completed with respect to Chambers's claims, Saturn filed a motion for summary judgment in October 2006. The motion was supported by a "Statement of Undisputed Material Facts" (Statement of Facts). The Statement of Facts asserted that Chambers could perform the activities of daily living and was therefore not disabled within the meaning of the ADA. Chambers, who was by then proceeding pro se, did not file a timely response. The district court subsequently entered an order that granted Saturn's motion and dismissed Chambers's lawsuit on January 18, 2007.

On January 19, 2007, the very next day after the judgment of the district court was entered, Chambers filed a response to Saturn's Statement of Facts and a supporting affidavit (the January 19 filings). The district court treated the January 19 filings as a motion to alter or amend the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, which it denied on January 23, 2007. On January 30, 2007, Chambers filed a "Motion to Alter Court's Judgment of January 18, 2007 Dismissing Plaintiff's Case or in the Alternative Asking the Court to Reconsider Its January 23, 2007 Order," accompanied by another affidavit dated the same day (the January 30 Motion). The January 30 Motion was denied the following day. On March 2, 2007, Chambers filed his notice of appeal.

In May 2009, we directed the parties to submit letter briefs addressing the following issue:

> Should the ADA Amendments Act, Pub. L. No. 110-325, 122 Stat. 3553 (2008), be retroactively applied to the present case?

-4-

The next month, the parties notified this court that Saturn had filed for bankruptcy. Proceedings were accordingly stayed until June 2013, when Saturn notified the court that its bankruptcy proceedings had ended. The parties then filed a joint statement acknowledging that the ADA Amendments Act is not retroactive. This case is now ripe for disposition.

## II. ANALYSIS

**A.      Timeliness of appeal**

Before we consider the merits of this case, we must ascertain whether Chambers's appeal is timely. Rule 4(a)(1)(A) of the Federal Rules of Appellate Procedure provides that, in a civil case, the notice of appeal must be filed within 30 days after the judgment or order being appealed from is entered. An exception to this rule applies when the party timely files a motion to alter or amend the judgment under Rule 59 of the Federal Rules of Civil Procedure. Fed. R. App. P. 4(a)(4)(A)(iv). At the time this appeal was filed, a motion to alter or amend the judgment was timely under Rule 59(e) if it was filed within 10 days after the judgment was entered. Fed. R. Civ. P. 59(e) (2007). (Parties now have 28 days to file such motions.) If a party timely files a Rule 59(e) motion, "the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion." Fed. R. App. P. 4(a)(4)(A).

The district court in this case entered its judgment on January 18, 2007. The version of Rule 6(a) of the Federal Rules of Civil Procedure in effect at that time provided that, in calculating a time period of less than 11 days, the day that the judgment was entered did not count toward the time period, nor did intermediate Saturdays, Sundays, or legal holidays. Chambers therefore had until

February 1, 2007 to file a Rule 59(e) motion. His January 30 Motion was thus presumptively a timely one under Rule 59(e), meaning that his 30 days to appeal did not begin to run until the denial of the January 30 Motion on January 31. Chambers's March 2, 2007 notice of appeal therefore appears to be timely.

But Saturn argues that Chambers's appeal was untimely because his January 30 Motion was a successive Rule 59(e) motion that did not toll the appeal period. Saturn instead contends that Chambers's appeal period began to run when the district court denied Chambers's January 19 filings which the court construed as a Rule 59(e) motion on January 23, 2007. Under this scenario, the latest date on which Chambers could have timely filed his notice of appeal was February 23, 2007.

Saturn relies on cases in our circuit and in our sister circuits that purportedly stand for the proposition that a successive Rule 59(e) motion, where the first motion is denied, does not toll the appeals period. *See, e.g.*, *Charles L.M. v. Ne. Indep. Sch. Dist.*, 884 F.2d 869, 870 (5th Cir. 1989); *Charles v. Daley*, 799 F.2d 343, 346-48 (7th Cir. 1986); *Reed v. Toledo Area Affirmative Action Program for Constr. Indus.*, 715 F.2d 253, 254 (6th Cir. 1983). But these and other cases that Saturn relies on are distinguishable because the appellants filed the second post-judgment motion *beyond the time within which to seek reconsideration of the original judgment*. The courts in those cases understandably determined that the second motion did not again toll the running of the time in which to take an appeal. As the Seventh Circuit observed, "[t]he time limit would be a joke if parties could continually file new motions, preventing the judgment from becoming final." *Charles*, 799 F.2d at 347.

In contrast, Chambers's second post-judgment pleading was filed within the 10-day time limit then allowed for motions to alter or amend the original judgment. Chambers thus had no need to rely on his initial filing on January 19 to establish the timeliness of his January 30 Motion. This is not a case where a party is seeking to extend the 30-day appeal period by filing successive post-judgment motions. Chambers filed his appeal less than 30 days after the denial of a post-judgment motion that was filed within 10 days of the original judgment. Recognizing Chambers's January 30 Motion as timely filed under Rule 59(e) thus does not have the deleterious consequences described in the cases relied on by Saturn.

The only remaining question is whether a successive but timely filed Rule 59(e) motion can toll the time for filing a notice of appeal. Rule 4(a)(4) of the Federal Rules of Appellate Procedure refers to the entry of an order "disposing of the last such remaining motion," implying that more than one Rule 59(e) motion may be filed. Even if this language was intended to account only for the possibility that multiple parties may file such motions, its broad language still supports Chambers's position.

Saturn has pointed to no authority, in this circuit or elsewhere, that stands for the proposition that the appeal period is not tolled when a party files a second or successive Rule 59(e) motion within 10 days of the original judgment. Nor has our own research yielded any such cases. Moreover, although the district court treated Chambers's January 19 filings as a Rule 59(e) motion, Chambers's January 30 Motion was the first motion filed by him that addressed the January 18, 2007 summary judgment order. The motion asked the court to alter that order or, alternatively, to reconsider its order of January 23. To the extent that the motion was addressed to the January 18

judgment, it was a proper Rule 59(e) motion. The district court rejected the January 30 Motion on the merits, not because it was considered as a successive Rule 59(e) motion. Chambers's appeal is therefore timely and properly before us.

**B.      Appropriateness of summary judgment**

*1.      Application of law*

On September 25, 2008, Congress amended the ADA to reject the narrow interpretation of what constitutes a disability as set forth in *Sutton v. United Airlines, Inc.*, 527 U.S. 471 (1999), and *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002). Congress expressed its intent that the ADA be construed in favor of broad coverage, effective January 1, 2009. ADA Amendments Act of 2008, Pub. L. No. 110-325, § 2(b), 122 Stat. 3553, 3554 (2008). Among other things, the Amendments Act directs that "[a]n impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability." *Id.* But because the allegedly discriminatory events in this case took place before the Amendments Act took effect, the Amendments Act does not apply to the present case. *See Donald v. Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir. 2012) (noting that, where the events at issue took place before the effective date of the ADA Amendments Act, the prior version of the ADA applies); *Milholland v. Sumner Cnty. Bd. of Educ.*, 569 F.3d 562, 565 (6th Cir. 2009) (holding that the ADA Amendments Act did not govern the case "because its application would have the type of impermissibly retroactive effect that requires a clearly-stated congressional intent."). The parties are in agreement that the Amendments Act does not apply retroactively to this case.

*2.      Standard of review*

We now turn to whether the district court properly granted summary judgment in favor of Saturn. This court reviews de novo a district court's grant of summary judgment. *Huckaby v. Priest*, 636 F.3d 211, 216 (6th Cir. 2011). Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering such a motion, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 620 (6th Cir. 2013) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 52 (1986)".

### 3. *Chambers's ADA claim*

To establish a *prima facie* case of discrimination under the ADA, Chambers had to show that

> 1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced.

*Timm v. Wright State Univ.*, 375 F.3d 418, 423 (6th Cir. 2004).

Saturn does not dispute that Chambers has physical impairments with regard to his neck, shoulders, arms, and hands that make it more difficult for him to engage in a number of activities. "Nevertheless, the existence of a physical impairment alone is insufficient to support a finding of a disability for the purpose of the ADA." *Anderson v. Inland Paperboard & Packaging*, 11 F. App'x 432, 436 (6th Cir. 2001) (citing *McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369, 373 (6th

Cir. 1997) ("[N]ot every impairment qualifies as a disability protected by the ADA.")). "An individual is considered disabled under the ADA," as relevant to the present case, if he or she "has a physical or mental impairment that substantially limits one or more of the major life activities." *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008) (internal quotation marks omitted).

Before the ADA Amendments Act, the Equal Employment Opportunity Commission defined "major life activities" to include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (2007). Being "substantially limited" in such activities meant that an individual was "[u]nable to perform a major life activity that the average person in the general population can perform" or was "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to . . . [an] average person in the general population." *Id.* § 1630.2(j)(1); *see also Williams*, 534 U.S. at 198 (holding that the proper disability determination is whether the individual "ha[s] an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives").

During Chambers's 1998 deposition, at which time he was represented by counsel, Chambers testified that his injuries have caused neck pains that occasionally limit his ability to drive, lift certain weights, look up and down, reach up and get objects off a shelf, and walk in a mall. He admitted, however, that on most days he is able to dress himself, shave, walk, stand, climb stairs, and drive. During Chambers's second deposition in 2006, he testified that he is able to walk, shop for groceries, do laundry, prepare meals, and go to the movies. In a 2005 medical evaluation, Chambers's

physician Dr. Frederick Wade opined that Chambers "may continue/return to light duty permanent. No lifting more than 20 pounds. No work at or above shoulder level. No repetitive work motion. No power tools, torque guns, or lift with arms outreached." Dr. Wade did not comment on Chambers's ability to care for himself or engage in routine daily activities.

Chambers states in the affidavit attached to his January 30 Motion that he "cannot bathe without assistance," "cannot manually scrub, clean, or otherwise use moderate force," "ha[s] serious difficulty using cooking utensils and handling pots and pans and washing dishes," and "cannot run, lift weights, do aerobic exercises, swim, do sit ups, chin ups or push ups." He also alleges that his injuries limit his ability to "do a wide range of daily life activities including[] driving, parking, sleeping, flossing teeth, grocery shopping, and tying my shoes."

Chambers has not explained why this post-judgment affidavit was not submitted in a timely fashion. Moreover, Chambers raised for the first time in the affidavit his difficulty bathing, which he never mentioned during his two depositions. Other statements in the affidavit are also in tension with his deposition testimony, in which he stated that he was able to attend to his bodily functions, walk, drive, shop for groceries, and prepare meals. Finally, his assertion that he is not able to bathe without assistance, use cooking utensils, or clean is uncorroborated by any medical evidence in the record.

"A party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts [his] earlier deposition testimony." *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986). Because Chambers has not explained why we

should consider the information set forth in his post-judgment affidavits, we decline to do so to the extent that these new facts contradict Chambers's earlier deposition testimony.

We now turn to whether Chambers's impairments constitute a disability under the caselaw interpreting the prior version of the ADA. "The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual." *Sutton v. United Air Lines*, 527 U.S. 471, 483 (1999) (quoting 29 C.F.R. pt. 1630, App. § 1630.2(j)). Although such an inquiry is necessarily highly fact-intensive and case-specific, we find instructive a number of cases previously decided by both the Supreme Court and by this court. The most relevant Supreme Court decision is *Toyota Motor Manufacturing, Kentucky v. Williams*, 534 U.S. 184, 198 (2002). In *Williams*, the employee could not perform "repetitive work with hands and arms extended at or above shoulder levels for extended periods of time." *Id.* at 192. Her carpal tunnel syndrome also caused her to "avoid sweeping, to quit dancing, to occasionally seek help dressing, and to reduce how often she plays with her children, gardens, and drives long distances." *Id*. at 202. The Court noted that Williams could, however, "brush her teeth, wash her face, bathe, tend her flower garden, fix breakfast, do laundry, and pick up around the house." *Id*. After holding that the appellate court should focus its inquiry on *those* activities as "activities that are of central importance to most people's daily lives," *id.*, the Court reversed the appellate court's decision that Williams was disabled as a matter of law.

Decisions from this circuit have likewise held that plaintiffs with similar (though not identical) physical impairments to Chambers were not disabled under the ADA. This court has held,

for example, that restrictions on the amount of weight that one is able to lift is not, in and of itself, a disability. *Gayer v. Cont'l Airlines, Inc.*, 21 F. App'x 347, 350 (6th Cir. 2001) ("[F]ederal case law supports that a maximum weight restriction is not a disability as defined by the ADA." (internal quotation marks omitted)). We have also held that foot, leg, and shoulder injuries that prevent the plaintiff from running, jumping, bending, and working more than eight hours a day do not "rise to the level of a disability under the ADA." *Anderson v. Inland Paperboard & Packaging*, 11 F. App'x 432, 436-37 (6th Cir. 2001). Similarly, a person who was unable to "resume normal work activities such as lifting, reaching, stooping and twisting" was determined not to be disabled. *Ross v. Campbell Soup Co.*, 237 F.3d 701, 703, 706 (6th Cir. 2001). Finally, we have held that an employee who was restricted from lifting weights of less than ten pounds, pushing or pulling, using vibrating tools, and making repetitive motions with her right hand was not disabled under the ADA. *McKay v. Toyota Motor Mfg. U.S.A.*, 110 F.3d 369, 370-71, 374 (6th Cir. 1997). This court noted in *McKay* that the "plaintiff was not limited in the 'major life activity' of caring for herself because 'the only household function McKay claims to be substantially limited in is mopping.'" *Id.* at 371-72.

We find ample evidence in the record to show that Chambers is able to care for himself. Chambers's injuries do not significantly prevent him from walking, standing, climbing stairs, driving, dressing himself, doing laundry, and shaving. Chambers admitted during his two depositions that although his neck and shoulder pains have changed the manner and frequency with which he performs certain activities, he is able to engage in all of them. Although he claims in his January 30, 2007 affidavit that he cannot bathe without assistance, cook, or clean, he alleged these facts only after the district court granted summary judgment.

Chambers's remaining argument, which he does not develop on appeal, is that he is substantially limited in his ability to work. Both 29 C.F.R. § 1630.2(i) (2007) and the Supreme Court have acknowledged that "working" may be considered a major life activity. *Sutton*, 527 U.S. at 492. But this court's pre-ADA Amendments Act caselaw repeatedly held that the major life activity of working is not substantially limited simply because an employee's physical or psychological impairment prevents him from performing a particular job. *See Black v. Roadway Express, Inc.*, 297 F.3d 445, 454-55 (6th Cir. 2002) (finding that the plaintiff's knee injury did not prevent him from performing a broad class of truck-driving jobs); *Mahon v. Crowell*, 295 F.3d 585, 591-92 (6th Cir. 2002) (holding that the plaintiff's back problems did not substantially limit his ability to work in a broad class of jobs); *McKay*, 110 F.3d at 373 (holding that the plaintiff's carpal tunnel syndrome, which prevented her from performing only a narrow range of assembly-line jobs, was not an impairment that substantially limited her general ability to work); *Jasany v. United States Postal Serv.*, 755 F.2d 1244, 1250 (6th Cir. 1985) (holding that the plaintiff was not substantially limited in the life activity of working where the plaintiff's eye impairment, although a permanent one that prevented him from performing the functions of a postal distribution clerk, did not interfere with his ability to work other jobs). "To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice." *Sutton*, 527 U.S. at 492. The claimants must, at a minimum, allege that they are unable "to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." *Id.* at 491.

Chambers has not demonstrated that he is unable to perform a class of jobs or a broad range of jobs in various classes. Moreover, Saturn proffered unrebutted evidence from an vocational expert that, during the period when Chambers was on leave from Saturn, there was an average of 336,388 available jobs in the Middle Tennessee area that Chambers was qualified to perform with his restrictions. Indeed, at the time that the briefs were submitted in this matter, Chambers was employed with Saturn as a quality technician, and he performed temporary jobs at Saturn before he was put on medical leave. Chambers has therefore failed to show that he is substantially limited from working.

We conclude that Chambers has not carried his burden of proving that he is disabled within the meaning of the ADA as it existed before the ADA Amendments Act. Accordingly, we have no need to consider the other factors required to establish a prima facie case of disability discrimination.

## C.     Denial of the post-judgment motion

Finally, we turn to the question of whether the district court properly denied Chambers's motion to alter or amend the judgment. The circumstances under which a district court may grant a Rule 59(e) motion are limited. "A district court may grant a Rule 59(e) motion . . . only if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 496 (6th Cir. 2006) (internal quotation marks omitted).

Chambers has not established any of the four alternative showings. First, he did not identify any clear error of law made by the district court in his motion to alter or amend judgment, nor does he argue one now. Second, his two late-filed affidavits do not contain any newly discovered evidence

because, "[t]o constitute 'newly discovered evidence,' the evidence must have been previously unavailable." *Gencorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). "[A] district court does not abuse its discretion in denying a Rule 59 motion when it is premised on evidence that the party had in his control prior to the original entry of judgment." *Emmons v. Mclaughlin*, 874 F.2d 351, 358 (6th Cir. 1989). Chambers's late-filed affidavits do not constitute "newly discovered evidence" because he had personal knowledge about his own activities that he could have submitted to the district court prior to the entry of summary judgment.

Third, Chambers has not argued any intervening change in the controlling law. Finally, we do not find any manifest injustice in the district court's entry of summary judgment for Saturn. Chambers had an opportunity to file a timely response to Saturn's summary judgment motion but failed to do so. Both his January 19 filings and his January 30 Motion were adequately considered by the district court before they were denied. Because Chambers made none of the showings required for the grant of a Rule 59(e) motion, the district court did not err in denying the same.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.