RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0119p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

MICHAEL ADAM BOOTH,

*Plaintiff-Appellant*,

*v.*

No. 18-5985

NISSAN NORTH AMERICA, INC.,

*Defendant-Appellee*.

───────────────

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:17-cv-00755—William Lynn Campbell, Jr., District Judge.

Argued: April 30, 2019

Decided and Filed: June 7, 2019

Before: GUY, SUTTON, and NALBANDIAN, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Constance Mann, THE LAW OFFICES OF CONSTANCE MANN, Franklin, Tennessee, for Appellant. Stanley E. Graham, WALLER LANSDEN DORTCH & DAVIS, LLP, Nashville, Tennessee, for Appellee. **ON BRIEF:** Constance Mann, THE LAW OFFICES OF CONSTANCE MANN, Franklin, Tennessee, for Appellant. Stanley E. Graham, Brittany Stancombe Hopper, WALLER LANSDEN DORTCH & DAVIS, LLP, Nashville, Tennessee, for Appellee.

───────────────

## OPINION

───────────────

NALBANDIAN, Circuit Judge. After Michael Booth started working at a Nissan factory in Tennessee, he injured his neck and sought medical treatment. Booth's physician

recommended several work restrictions, including that he not reach above his head or flex his neck too much, but the restrictions did not sideline Booth. Indeed, he continued to work on the assembly line for about a decade without incident. But in 2015, the work restrictions became relevant again. Booth requested a transfer to a different position in the factory, which Nissan denied because that position's duties conflicted with Booth's work restrictions. Booth contends that Nissan's denial was disability discrimination that violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*

Soon after Booth requested the transfer, Nissan announced plans to restructure the assembly line. While Booth and his co-workers on the line had performed two discrete jobs, Nissan wanted to modify the line so that workers would perform four jobs. Booth alleges that the two additional jobs Nissan assigned to him would have violated his work restrictions—and that when he informed Nissan about this conflict, Nissan told him to see a physician to assess whether he still needed the restrictions. Booth followed that request, and his physician modified the restrictions, clearing him to work all four jobs. Although Booth remains a Nissan employee, he claims that Nissan failed to accommodate him—a separate violation of the ADA—by pressuring him to remove his work restrictions.

Of course, to sue under the ADA, the plaintiff must *be disabled*. And just because a plaintiff has work restrictions does not mean that he is disabled. Because Booth has not advanced evidence that he is disabled under the ADA (among other reasons), his claims fail. We AFFIRM the district court's decision granting summary judgment to Nissan.

**I.**

After Booth had begun working at Nissan, he injured his neck in October 2004. Booth visited his physician, who issued a report recommending several permanent work restrictions, including that (1) Booth work overhead or above his shoulders no more than 33% of the time; and (2) Booth flex or extend his neck no more than 66% of the time. Those restrictions did not affect Booth's day-to-day job duties: Booth explained that "[f]rom 2004 through 2015, [he] worked within his original 2005 restrictions." (R. 32, Pl.'s Resp. to Statement of Material Facts

at ¶ 9.)  In April 2014, Nissan transferred Booth to a different part of the assembly line, the "door line," but Booth's work restrictions did not interfere with his work there, either.

This appeal concerns two events that occurred about a decade after Booth's physician recommended the work restrictions:  (1) Booth's requested transfer to a material handling position; and (2) Booth's transition on the door line from a two-job position to a four-job position.  We consider each event below.

*Material Handling Transfer*.  Sometime in September or October 2015, Booth requested a transfer to a material handling position.  If Nissan had granted the transfer, Booth would not have seen any changes to his pay or benefits.  But Booth alleges that the material handling position was less stressful and thus more desirable than his position on the line.  Nissan refers internally to the material handling role as a "preferred" position that it awards to applicants based on seniority and their ability to perform the position's essential functions.

Nissan denied Booth's transfer request.  In November 2015, Nissan human resources representative Darron Keith informed Booth that although he had enough seniority to apply for the material handling position, his work restrictions conflicted with the position's requirements.  Booth, however, insisted that he could perform the role without violating his restrictions, and asked to speak about Nissan's decision with other supervisors.  The next month, Booth met with Debbie Nelson, a manager in Nissan's medical department, to discuss why Nissan had denied his transfer request.  Once again, Booth heard that his work restrictions conflicted with the duties of the material handling role.  Not satisfied with that explanation, Booth continued to pursue the matter with his supervisors; in October 2016, Booth met with Randy Knight, a Nissan senior manager, to discuss why Nissan denied his transfer application.  Knight promised to get back to Booth, but in the interim, Booth remained in his position on the line.

*Door Line Transition*.  When Booth arrived at the door line in 2014, workers there had to perform two discrete jobs.  For Booth, that meant installing the right-side water shield and the left-side regulator.  But around the time Booth requested the transfer, Nissan announced plans to overhaul its assembly lines, including the door line.  Rather than perform two discrete installation jobs, door line workers would have to install four components of a car.  In Booth's

case, Nissan wanted him to start installing the left-side door glass and left-side door panel along with the two jobs he was already performing. When Booth met with Darron Keith in November 2015 to discuss the material handling position, he told Keith that the two new installation jobs Nissan wanted him to perform would violate his work restrictions and again requested to transfer to the material handling position, which Booth described as "an easier and simpler job." (R. 25–2, Booth Dep. at 36:7–13.)

In September 2016, Nissan started implementing the announced changes to its assembly lines. So once more, Booth warned Nissan management—including his direct supervisor Randy Wiseman—that his work restrictions might prevent him from performing all four jobs on the door line. In response, Nissan inquired with its insurer whether Booth could perform any of the jobs on the door line. Nissan soon learned that no such jobs existed, so Nissan kept Booth in his two-job position for the time being.

Later that fall, Nissan supervisors began to express concern that Booth's restrictions would interfere with his ability to remain on the door line—even in his two-job position. According to Booth, Randy Knight suggested that the two jobs Booth was already performing— installing the right-side rear water shield and the left-side regulator—conflicted with his work restrictions. Later, Knight warned Booth that Nissan was "not going to have a job for [him]" unless he changed the work restrictions. (R. 31–6, Booth Dep. at 98:20–25.) To prevent that from happening, several Nissan employees—including Knight and Wiseman—encouraged Booth to see a physician to determine whether his restrictions were still medically necessary. Email correspondence between Nissan supervisors reflects the same concern. In November 2016, Nissan senior manager Mark LaCroix emailed a colleague to explain that Booth's restrictions do not "clea[r] him to run any jobs in the plant" and that Nissan advised Booth "of the steps he would need to take in order to possibly improve his current standings in regards to his restrictions." (R. 31–5, Email.) LaCroix followed up on his email in January 2017, noting that Nissan "continued to let [Booth] work in his current pod, but we can't continue to do that if he doesn't get his Perm Restrictions modified to clear him for duty." (*Id.*) And Nissan human resources manager Bill Slagle responded that while Booth had scheduled several medical appointments to reevaluate his restrictions, he "needs to be refreshed on the urgency and need for

the medical clinic to assess the findings of the doctor and make a determination regarding his current restrictions." (*Id.*)

Booth ultimately met with a physician, who performed a functional capacity test and issued a report modifying Booth's work restrictions. Under Booth's 2005 work restrictions, he could not flex his neck more than 66% of the time, but the physician removed that restriction entirely. The physician maintained the restrictions that limited Booth's overhead activity and reaching to no more than 33% of the time. But while Booth's 2005 restrictions applied to both his right and left side, the physician limited the restrictions only to activity on Booth's left side. Booth testified that he has no disagreement with his physician's revisions to his work restrictions.

After Booth informed his supervisors about the revised work restrictions, Nissan determined that he could work the full, four-job position without violating his work restrictions. In February 2017, Nissan cleared Booth to work on the assembly line, and Booth's counsel stated at oral argument that Booth continues to work there.

This litigation dates to November 2016, when Booth filed an intake questionnaire with the Equal Employment Opportunity Commission in which he alleged disability discrimination. Booth then filed a formal charge with the Tennessee Human Rights Commission in December 2016, alleging disability discrimination and retaliation. The EEOC dismissed Booth's charge after concluding that Booth had not supplied sufficient information to establish an ADA violation. So Booth filed this lawsuit in the Middle District of Tennessee, alleging failure-to-accommodate and disability discrimination, both in violation of the ADA, and a state law workers' compensation retaliation claim. Nissan moved for summary judgment, which the district court granted. Booth appeals the district court's dismissal of his ADA claims.[1]

**II.**

We review a district court's summary judgment decision de novo. *Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*, 898 F.3d 710, 715 (6th Cir. 2018). In doing so, we must view

---

[1]Booth did not appeal the district court's dismissal of his workers' compensation retaliation claim so we do not address that issue.

the evidence and draw all inferences in the light most favorable to Booth, the nonmoving party, to determine whether there is a genuine issue of material fact. *Henschel v. Clare Cty. Rd. Comm'n*, 737 F.3d 1017, 1022 (6th Cir. 2013). If there is, summary judgment is improper. *Id.*

**A.**

Booth's first claim is that Nissan engaged in disability discrimination when it denied his requested transfer to the material handling role. But before we can consider the merits of that claim, we first address Nissan's argument that the claim is untimely. Booth's claim arises under the ADA, which imposes several procedural requirements before plaintiffs may turn to federal court for relief. *Bullington v. Bedford Cty.*, 905 F.3d 467, 469 (6th Cir. 2018). One such requirement relates to timeliness: the plaintiff must first file a charge describing the alleged discrimination, either with the EEOC or with an equivalent state agency, before he can litigate the claim in court. *Cox v. City of Memphis*, 230 F.3d 199, 202 n.2 (6th Cir. 2000). If the plaintiff files his charge directly with the EEOC, he must do so within 180 days of the alleged discrimination; if he chooses instead to file the charge with an equivalent state agency, he has 300 days from the alleged discrimination. *See* 42 U.S.C. § 12117; 42 U.S.C. § 2000e-5; *Block v. Meharry Med. Coll.*, 723 F. App'x 273, 277 (6th Cir. 2018).

Booth filed his charge with the Tennessee Human Rights Commission on December 9, 2016, so for his claim to be timely, the alleged discrimination must have occurred sometime within 300 days of December 9, 2016. Thus, our task is to determine when the alleged discrimination occurred. According to Nissan, the 300-day deadline for Booth to file his charge began sometime in November 2015, when Nissan supervisor Darron Keith informed Booth that Nissan had rejected his transfer request. If Nissan is correct, then Booth's claim is untimely: even if Keith told Booth about the decision on November 30, 2015, Booth still waited more than 300 days before filing his charge. Booth, however, argues that Nissan did not make a final decision about his transfer request until sometime in October or November 2016—and that his charge is therefore timely.

We find Nissan's argument persuasive. Booth has advanced no evidence to suggest that Nissan's denial of his transfer request in November 2015 was anything but a final decision.

True, Booth requested to speak with other supervisors after learning that Nissan had denied his transfer, and Nissan granted that request. But Nissan's decision was no less final, simply because Nissan supervisors explained the company's decision to Booth several times in 2015 and 2016. Those discussions did not reset the 300-day deadline to file the charge.

We considered a similar issue in *Hall v. The Scotts Co.*, in which the plaintiff sued his employer under the ADA after his employer refused to purchase special respirator equipment that would have allowed him to operate a forklift. 211 F. App'x 361 (6th Cir. 2006). The employer announced its decision to not purchase the equipment in August 2003, citing safety concerns. *Id.* at 362. In November, the plaintiff offered to purchase the equipment himself if it meant that he could operate the forklift, but the employer declined that offer in December. *Id.* The plaintiff then filed a charge in October 2004 and later filed a complaint in federal court. We held that the claim was untimely because the allegedly discriminatory act occurred in August 2003, when the employer first denied the plaintiff's requested accommodation, and we described the plaintiff's later request as "simply an impotent attempt to renew his earlier request" rather than the "culmination of an interactive process to accommodate his disability." *Id.* at 363 (internal quotation marks omitted). Our reasoning in *Hall* applies with equal force here. Booth had 300 days to file a charge from November 2015, when Keith informed him that Nissan denied his transfer request. Even if we assume that Keith notified Booth on the last day of November, Booth's charge would still be late. Thus, Booth cannot pursue his disability discrimination claim in federal court.

If Booth had satisfied the ADA's procedural requirements, his disability discrimination claim would still fail because Booth has not supplied evidence to suggest that he is *disabled*. The ADA forbids employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). So to establish a prima facie claim for disability discrimination, the plaintiff must show that:

> 1) *he or she is disabled*; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability, and 5) the

position remained open while the employer sought other applicants or the disabled individual was replaced.

*Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011) (internal quotation marks and citations omitted; emphasis added). And to prove that he is disabled, Booth must show that he has (1) "a physical or mental impairment that substantially limits one or more major life activities," (2) "a record of such an impairment," or (3) "[is] regarded as having such an impairment[.]" 42 U.S.C. § 12102(1); *see also Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008). Finally, "working" is an example of a major life activity. 42 U.S.C. § 12102(2)(A).

Booth seems to assume that because he has work restrictions and because Nissan denied his transfer request because of those restrictions, he is disabled under the ADA. And he states that Nissan "do[es] not dispute [his] disability or need for accommodation." (Appellant Br. 13.) In fact, the record suggests that Nissan has vigorously disputed the issue: Nissan argued in its summary judgment motion before the district court that Booth is not disabled under the ADA, and Nissan raised that argument again in its brief to this court.[2] Indeed, Nissan argues that Booth is not disabled under the ADA and that his disability discrimination claim therefore fails.

Several of our published decisions support Nissan's position. We have held that simply having a work restriction does not automatically render one disabled, *McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369, 373 (6th Cir. 1997), nor does being unable to perform a discrete task or a specific job. *Id.; see also Mahon v. Crowell*, 295 F.3d 585, 591 (6th Cir. 2002). But as Booth's counsel noted at oral argument, those cases predate Congress's 2008 amendments to the ADA, which reflected a direct response to the Supreme Court's "narrow interpretation of what constitutes a disability." *Robbins v. Saturn Corp.*, 532 F. App'x 623, 628 (6th Cir. 2013). In amending the statute, Congress instructed courts that the "definition of disability . . . shall be construed in favor of broad coverage of individuals," 42 U.S.C. § 12102(4)(A), and the statute now underscores that an impairment that "substantially limits one major life activity need not limit other major life activities in order to be considered a disability." *Id.* § 12102(4)(C).

---

[2] The district court did not address Nissan's argument that Booth is not disabled and instead dismissed Booth's claims on other grounds.

Even so, Congress did not modify the definition of the major life activity of working, and a plaintiff who alleges a work-related disability "is still required to show that her impairment limits her ability to 'perform a class of jobs or broad range of jobs.'" *Tinsley v. Caterpillar Fin. Servs., Corp.*, No. 18-5303, 2019 WL 1302189, at *5 (6th Cir. Mar. 20, 2019) (quoting 29 C.F.R. § 1630, App. (2016)); *accord Mancini v. City of Providence*, 909 F.3d 32, 42 n.6 (1st Cir. 2018); *Carothers v. County of Cook*, 808 F.3d 1140, 1147 (7th Cir. 2015); *Allen v. SouthCrest Hosp.*, 455 F. App'x 827, 835 (10th Cir. 2011). EEOC regulations explain that a plaintiff cannot claim a disability by simply "[d]emonstrating a substantial limitation in performing the unique aspects of a single specific job." 29 C.F.R. § 1630, App. (2016). That Booth's neck injury and related work restrictions kept him from working *in the material handling role* does not resolve whether Booth is disabled under the ADA. Rather than point to one job that he cannot perform, a plaintiff alleging a work-related disability must show that his condition precludes him from working in a *class* or *broad range* of jobs, "such as . . . assembly line jobs." *Id.* Booth has not made that showing. To the contrary, Booth concedes that he has worked without interruption on the assembly line since injuring his neck in 2004—and has continued to work there since this litigation began.

Moreover, Booth does not argue that Nissan denied his transfer request because it regarded him as disabled. Nor could he. Under the ADA, an employee:

> meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

42 U.S.C. § 12102(3)(A). In other words, a plaintiff may seek relief under the ADA if his employer mistakenly believes that he is substantially limited from performing a major life activity, such as work. *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 893 (6th Cir. 2016). In *Ferrari*, a decision following Congress's 2008 amendments to the ADA, we considered whether the plaintiff's employer regarded him as disabled. *Id.* at 892–93. The plaintiff in that case worked on a Ford assembly line and became eligible for a transfer to a skilled trade apprenticeship, provided he passed a medical examination to ensure that he could perform the

role. *Id.* at 889. That proved to be a problem: the plaintiff had injured his neck and treated the injury with prescription opioids, yet the apprenticeship would have required him to work regularly overhead and climb 50-foot ladders. *Id.* Ford concluded that the plaintiff's opioid use precluded him from holding the apprenticeship position and placed him instead in a machining position that met his restrictions. *Id.* at 890–91. We rejected the plaintiff's argument that Ford regarded him as disabled, noting that Ford had placed the plaintiff in "both clerical and assembly positions" and that Ford had "only barred [the plaintiff] from a single, particular job—the [ ] apprenticeship." *Id.* at 893. Thus, we concluded that the evidence did not show that Ford regarded the plaintiff's restrictions "as a substantial impairment on the major life activity of working." *Id.* at 894. For these same reasons, Booth has not shown that Nissan regarded him as disabled when it denied his transfer request (while employing him on the assembly line all along).

At summary judgment, we must draw all inferences and view all evidence in the light most favorable to Booth, the nonmoving party. *Henschel*, 737 F.3d at 1022. But if the moving party shows the lack of a genuine issue of material fact on an element of the nonmoving party's case, the nonmoving party must set forth specific facts showing a triable issue. *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451–52 (6th Cir. 2004). Because Booth has advanced no evidence of his disability beyond his work restrictions, he cannot show that he is disabled and has therefore failed to carry his burden at summary judgment. We affirm the district court's grant of summary judgment on that claim.

**B.**

Booth brings a separate claim under the ADA, alleging that Nissan failed to accommodate his disability after it modified its assembly lines. The thrust of Booth's argument is that Nissan pressured him to remove his work restrictions—and, indeed, warned that there would be no jobs for him at the factory—rather than accommodate his limitations.

Unlike his disability discrimination claim, Booth's failure-to-accommodate claim is timely because the alleged conduct underlying this claim continued even after Booth filed his charge with the Tennessee Human Rights Commission. Thus, we consider the merits of Booth's

claim.   Generally, there are two ways to prove disability discrimination—either directly or indirectly.  *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018) (citing *Ferrari*, 826 F.3d at 891).  The type of evidence (direct or indirect) that the plaintiff must provide—and the test that governs the plaintiff's claim—depends on the nature of the claim.  Here, failure-to-accommodate claims "necessarily involve direct evidence (the failure to accommodate) of discrimination."  *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 869 (6th Cir. 2007) (citing *Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1283 (7th Cir. 1996)); *see also E.E.O.C. v. Dolgencorp, LLC*, 899 F.3d 428, 435 (6th Cir. 2018) ("And failing to provide a protected employee a reasonable accommodation constitutes direct evidence of discrimination.")  So to bring a claim for failure-to-accommodate, the plaintiff must provide *direct evidence* that he suffered an adverse employment action because of his disability.  *Ferrari*, 826 F.3d at 891.

Under the direct method of proof, the plaintiff must prove that (1) he is disabled under the ADA; and (2) he is otherwise qualified for the position, despite his disability, "(a) without accommodation from the employer; (b) with an alleged 'essential' job requirement eliminated; or (c) with a proposed reasonable accommodation."  *Ferrari*, 826 F.3d at 891 (citation omitted).  If the plaintiff proves those elements, his employer must then show that "a challenged job criterion is essential . . . or that a proposed accommodation will impose an undue hardship."  *Id.* (citation omitted).

Like his disability discrimination claim, Booth's failure-to-accommodate claim fails out of the gate because he has not advanced an argument, supported by evidence, that he is disabled under the ADA.[3]  But even setting the disability element aside, Booth's failure-to-accommodate claim fails for a separate reason:  Nissan never failed to accommodate Booth.  Nissan allowed Booth to remain in the two-job position after he alerted his supervisors that the two new tasks Nissan wanted him to perform conflicted with his work restrictions.  And Booth remained in that role while he sought medical advice about his work restrictions.  Nissan did not move Booth from the two-job position until it reviewed his doctor's report and determined that his work

---

[3]We note that this issue would have been closer, had Booth argued that Nissan regarded him as disabled when it warned Booth that he would be jobless unless he changed his work restrictions.  But Booth does not make this argument in his brief, and in any event, his failure-to-accommodate claim fails for separate reasons.

restrictions did not conflict with the modified positions on the assembly line. Nor does Booth suggest that he misreported his symptoms or otherwise encouraged his doctor to modify the restrictions in order to preserve his job. To the contrary, Booth testified that he does not disagree with his doctor's revisions to his work restrictions. So Booth's claim also fails because he has offered no evidence that Nissan failed to accommodate him.

## III.

For these reasons, we AFFIRM the district court's summary judgment decision.