RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0343p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

WAYNE HENSCHEL,

        *Plaintiff-Appellant*,

    *v.*

CLARE COUNTY ROAD COMMISSION,

        *Defendant-Appellee*.

No. 13-1528

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 1:12-cv-11777—Thomas L. Ludington, District Judge.

Decided and Filed: December 13, 2013

Before: COOK and STRANCH, Circuit Judges; CARR, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** Julie A. Gafkay, Travis I. Dafoe, GAFKAY & GARDNER, PLC, Frankenmuth, Michigan, for Appellant. Thomas H. Derderian, MICHAEL R. KLUCK & ASSOC., Okemos, Michigan, for Appellee.

_____

## OPINION

_____

JANE B. STRANCH, Circuit Judge. Wayne Henschel was working as an excavator operator for Clare County Road Commission (CCRC) when he lost his left leg above the knee in a motorcycle accident. Because he was not allowed to return to work, Henschel asserts that CCRC discriminated against him on account of his disability in violation of the Americans with Disabilities Act (ADA). The district court granted CCRC's motion for summary judgment, finding that Henschel could not perform the

_____

[*] The Honorable James G. Carr, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

essential functions of the excavator operator position and that no reasonable accommodation was possible.  Because genuine issues of material fact exist as to the essential functions of the excavator operator position, we AFFIRM IN PART and REVERSE IN PART.

## I. Background

Henschel started working for CCRC in February 2007.  His position was covered by a collective bargaining agreement (CBA) between CCRC and the American Federation of State, County and Municipal Employees (AFSCME) under which CCRC retained the right to manage its services and equipment and to hire, fire, and otherwise manage personnel.  The CBA provided for seniority rights based on the length of employment.  Henschel applied for and was assigned to CCRC's excavator operator position shortly after he was hired.  Then in August 2009, Henschel was involved in a motorcycle accident that resulted in the amputation of his left leg above the knee.  He was off work for a few months recovering from his injuries during which time he was fitted for a prosthetic leg.  While recovering he told others that he wanted to return to work.  In the meantime, CCRC advertised for and hired a temporary excavator operator to fill Henschel's position until he could return.

As excavator operator, Henschel ran an excavator—a piece of heavy equipment used for digging ditches and trenches—that was delivered to work sites on a trailer pulled by a manual transmission semi-truck.  Over the past decade, employees in various CCRC positions hauled the excavator to the work site.  Lee Schunk, a former long-term CCRC employee, operated the excavator for two years before Henschel took that job.  Schunk testified that during his tenure as an excavator operator, a semi-truck driver was responsible for transporting the excavator, allowing Schunk to drive an automatic-transmission pick-up truck to the work site.  As excavator operator, Henschel hauled the excavator to the work site 70 percent of the time and other CCRC employees, often the semi-truck driver, 30 percent.  During Henschel's tenure as excavator operator there was one regular semi-truck driver; during Schunk's tenure there were two.

CCRC specified the duty to haul equipment as a function assigned to its job description for Truck/Tractor Driver. CCRC did not include the hauling function in its Operator-Excavator job description; it did include in that description an "Other duties assigned" task, which could cover any CCRC task assigned. The person holding the Truck/Tractor Driver position was referred to as the semi-truck driver because his primary responsibility was to pull trailers in a semi-truck. Robert Fisch, who held the Truck/Tractor Driver position when Henschel sought to return to work, testified that he considered hauling the excavator to the work site to be one of the semi-truck driver's job duties. While the semi-truck driver sometimes has all-day tasks that would limit his availability to haul the excavator, Schunk testified that there were a number of other CCRC employees qualified to drive a semi-truck, as Henschel had been, and who could potentially haul the excavator.

The excavator was generally moved only when it needed to be brought to a new work site and, according to Henschel's testimony, 90 percent of the time it stayed at the work site. It was used at various work sites throughout the year for varying lengths of time; sometimes it was operated at the same site for weeks and other times the jobs were completed in a day. During the winter, the excavator was generally not in use and the excavator operator plowed snow using a blade truck or a grader.

After recovering sufficiently from his accident, Henschel asked to return to work on the excavator. Henschel met with his supervisor John Krchmar and CCRC's Engineer-Manager Steve Stocking at least twice about returning to the excavator operator position. Before returning, Henschel had to apply for a medical waiver to maintain the commercial driver's license (CDL) required by CCRC. Upon receiving his medical waiver application, the Michigan Traffic Safety Division sent a letter to CCRC requesting additional information, including "[a]n evaluation of Mr. Henschel's ability to perform the essential job functions of a truck driver, including driving a manual transmission, while using his prosthetic device." CCRC did not limit Henschel's testing to the essential functions of a truck driver; rather, on the direction of Stocking, Krchmar tested Henschel's ability to perform job functions related to every position at CCRC.

After receiving the results of the testing from Stocking, the Michigan Traffic Safety Division granted Henschel a medical waiver allowing him to retain his CDL, but limited him to automatic-transmission vehicles.

After Henschel's testing, CCRC did not try to return him to the excavator but looked into assigning him to a year-round blade truck driver position in an automatic-transmission blade truck. CCRC employed 13 blade truck drivers, one for each of its 13 automatic-transmission blade trucks; CCRC's manual-transmission blade trucks were used as spares but there were not any automatic-transmission spares. Following discussions with the Union, CCRC drafted and brought to the Union a letter of understanding whereby the Union would ask its current blade truck drivers if any would be willing to give up his automatic-transmission truck for Henschel and if none were willing, Henschel would be given the lowest seniority driver's truck. CCRC did not involve the Union in the drafting of the letter of understanding and the Union did not take a vote on it, which step would be required to revise the CBA. Two drivers initially volunteered to give up their trucks, but CCRC did not specify the job to which a volunteer would be transferred. CCRC apparently intended to demote the driver giving up his truck to the laborer pay scale. One driver withdrew his offer within a few days. The second driver trained Henschel for a week, but then also withdrew his offer to give up his truck because he was concerned about his work stability and had determined that Krchmar did not intend to consider him for the open excavator operator position. After the lowest seniority blade truck driver said that he did not want to give up his truck, the Union withdrew the letter of understanding with CCRC. CCRC's management decided that it did not have a position for Henschel and ultimately that he would be terminated.

In a letter to Henschel, CCRC told him that he was being terminated because of his inability to transport the excavator to the work site. Before terminating Henschel, CCRC did not ask the semi-truck driver if he would be willing and able to be responsible for hauling the excavator, nor does the record demonstrate that CCRC asked any of its other employees who were qualified to drive the semi-truck. Henschel was officially terminated in August 2010.

Henschel filed a claim against CCRC with the Equal Employment Opportunity Commission (EEOC). In a September 29, 2011 letter, the EEOC sent a determination letter stating that the evidence submitted supported a finding of a violation of the ADA. In April 2012, Henschel filed suit against CCRC under the ADA. The district court ruled for CCRC on summary judgment, finding that transporting the excavator to the work site was an essential function of the excavator operator position, that Henschel was unable to haul the excavator, and that reassigning him to a year-round truck driver position was not a reasonable accommodation.

## II. Standard of Review

We review the district court's grant of summary judgment de novo. *Saroli v. Automation & Modular Components, Inc.*, 405 F.3d 446, 450 (6th Cir. 2005). In doing so, we draw all reasonable inferences and view the evidence in the light most favorable to the appellant in order to determine if there is a genuine issue of material fact. *E.E.O.C. v. United Parcel Serv., Inc.*, 249 F.3d 557, 561 (6th Cir. 2001). Where there is a genuine issue of material fact, summary judgment is not appropriate. *Id*. A genuine issue for trial exists where reasonable minds could differ on a material fact. *See Keith v. Cnty. of Oakland*, 703 F.3d 918, 926–27 (6th Cir. 2013).

## III. Analysis

In an employment discrimination case under the ADA, a plaintiff must show that 1) he is an individual with a disability within the meaning of the ADA; 2) he is qualified to perform the essential functions of the job, with or without reasonable accommodation; and 3) he suffered an adverse employment decision because of his disability. *Gilday v. Mecosta Cnty.*, 124 F.3d 760, 762 (6th Cir. 1997); 42 U.S.C. § 12111(8). CCRC contends that Henschel's claim fails at the second prong because Henschel is not qualified for employment with CCRC, with or without reasonable accommodations.

**A. Essential Function**

The determination of what responsibilities are essential functions is "typically a question of fact and thus not suitable for resolution through a motion for judgment as matter of law . . . ." *Brickers v. Cleveland Bd. of Educ.*, 145 F.3d 846, 849 (6th Cir. 1998); *Hoskins v. Oakland Cnty. Sheriff's Dep't*, 227 F.3d 719, 726 (6th Cir. 2000) ("The inquiry into whether a function is essential is highly fact specific."). "A job function is essential if its removal would 'fundamentally alter' the position." *Kiphart v. Saturn Corp.*, 251 F.3d 573, 584 (6th Cir. 2001) (quoting 29 C.F.R. § 1630.2(n) app. at 356). According to the ADA, "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). The regulations accompanying the ADA provide seven non-exclusive factors for determining whether a particular function is essential:

> (i) The employer's judgment as to which functions are essential;
>
> (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
>
> (iii) The amount of time spent on the job performing the function;
>
> (iv) The consequences of not requiring the incumbent to perform the function;
>
> (v) The terms of a collective bargaining agreement;
>
> (vi) The experience of past incumbents in the job; and/or
>
> (vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3); *Brickers*, 145 F.3d at 849.

In finding that hauling the excavator was an essential function, the district court relied on: (1) CCRC's testimonial opinion that hauling is an essential function of the excavator operator position; (2) on its own conclusions that the position would fundamentally change if that responsibility were given to another employee; and (3) that CCRC lacked other employees to undertake the responsibility.

As the employer, CCRC's opinion that hauling is an essential function carries weight but is only one factor to be considered.  29 C.F.R. 1630.2(n)(3)(i); *see Mustafa v. Clark Cnty Sch. Dist.*, 157 F.3d 1169, 1175 n.6 (9th Cir.1998) (stating that a school district's assertion that classroom teaching was an essential function of a teacher "does not qualify as an undisputed statement of fact in the context of a motion for summary judgment.").  A court also must "conduct a fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice." *McMillan v. City of New York*, 711 F.3d 120, 126 (2d Cir. 2013) (internal quotation marks omitted); *see also Hall v. U.S. Postal Serv.*, 857 F.2d 1073, 1079 (6th Cir. 1988) (finding that in addition to looking to job descriptions, evaluating the essential functions of a position "should reflect the actual functioning and circumstances of the particular enterprise involved.").

We next review the job descriptions created by CCRC.  29 C.F.R. 1630.2(n)(3)(ii).  First, the duty of hauling equipment is already assigned; it is specified in the job description for the Truck/Tractor Driver.  Second, none of the three excavator operator job descriptions posted by CCRC since 2007 included hauling the excavator—or driving a manual transmission.  The excavator operator job descriptions do include "Other duties assigned" as a job duty.  The district court found it important that Clare County Manager Ron Bushong said that the other duties assigned may be "anything from any of the other [job] categories."  However, not every other duty under every other job category is an essential function of the excavator operator position.  To reach that conclusion would make the various job descriptions meaningless.  Essential functions are those that are fundamental to a particular position, not marginal functions. 29 C.F.R. § 1630.2(n)(1).

The remaining five factors specified in the regulations for determining if a function is essential examine the actual functions and circumstances of the position. Turning to those, we first examine the amount of time that the excavator operator spends hauling the excavator and the consequences of reassigning this responsibility. 29 C.F.R. § 1630.2(n)(3)(iii)–(iv).  The district court determined that hauling the excavator took

a substantial amount of the excavator operator's time, relying on Henschel's testimony that he hauled it 70 percent of the time. That evidence, however, only addresses the distribution of the work, not the amount of time actually spent transporting the excavator. The excavator is not moved every day and is sometimes operated at the same work site for weeks at a time. Henschel testified that 90 percent of the time, the excavator stayed at the job site. The record does not address how much time Henschel actually spent hauling the excavator to different work sites, but this obviously varies depending on the number and location of work sites. Viewed in the light most favorable to Henschel, there is sufficient evidence that hauling the excavator did not take much of the excavator operator's time and was a relatively marginal function. 29 C.F.R. § 1630.2(n)(3)(iii).

The district court also found that CCRC lacked employees to take on the responsibility of hauling the excavator because CCRC previously had two regular semi-truck drivers but during Henschel's employment, only had one. There is evidence in the record, however, to support the inference that even with only one regular semi-truck driver there would be minimal consequences to CCRC's operations if the excavator operator no longer hauled the excavator. *See* 29 C.F.R. § 1630.2(n)(3)(iv). Schunk, a former excavator operator for CCRC, testified that the semi-truck driver could have hauled the excavator for Henschel without a problem and that there were a number of CCRC employees other than the semi-truck driver who could do so when needed. In Schunk's experience as excavator operator—when CCRC had two semi-truck drivers rather one—a semi-truck driver was responsible for hauling the excavator to the work site and Schunk drove an automatic-transmission pickup truck to the excavator work site. *See* 29 C.F.R. § 1630.2(n)(3)(vi). While the number of regular semi-truck drivers has been reduced, Schunk's prior experience should not be summarily dismissed, given the evidence that hauling the excavator entailed a marginal time investment and that other CCRC employees were qualified and capable of doing the hauling. Furthermore, Robert Fisch, CCRC's semi-truck driver when Henschel attempted to return to work, testified that while he regularly had other day-long responsibilities, he would be able to do the hauling.

CCRC's written job descriptions provide evidence that hauling the excavator was the Truck/Tractor Driver's job duty and not one of the excavator operator's essential functions. There is also sufficient evidence for a reasonable jury to find that a number of the other factors—including the amount of time hauling takes, the consequences to other positions, and the experiences of past incumbents—support Henschel's position. CCRC's testimonial opinion is simply one factor that cuts the other way. Thus, there exists a genuine issue of material fact concerning whether hauling the excavator is an essential function of the excavator operator position, and summary judgment is not appropriate.

Because the district court found that hauling the excavator was an essential function and that Henschel was unable to perform that function, it did not address CCRC's second argument for summary judgment—that Henschel could not operate the excavator safely. Whether a disabled individual is qualified for a position, with or without reasonable accommodation, requires an individualized inquiry into the facts. *See Hall*, 857 F.2d at 1078–79. The record appears to reflect a dispute of fact on this issue. CCRC submitted evidence that Krchmar, Bushong, and John Smith—the local AFSCME Union head at the time of Henschel's attempted return—did not believe that Henschel could operate the excavator safely. Henschel submitted evidence that Schunk, a former CCRC excavator operator; Pifer, a CCRC employee who has operated the excavator at times; and A. David Brayton, a former Michigan Occupational Safety and Health Administration Construction Safety Inspector, all believed that Henschel could operate the excavator safely. While we may decide an appeal of summary judgment on an issue not decided by the district court, *Yeager v. Gen. Motors Corp.*, 265 F.3d 389, 396 (6th Cir. 2001), "absent exceptional circumstances, we normally decline to rule on an issue not decided below." *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 576 (6th Cir. 2013) (internal quotation marks omitted). We decline to rule here and remand to the district court to determine in the first instance if a genuine issue of material fact exists as to whether Henschel is qualified to operate the excavator.

**B. Reasonable Accommodation**

The district court also determined that CCRC did not violate the ADA by failing to reassign Henschel to a *year-round* blade truck driver position because that was not a reasonable accommodation. A reasonable accommodation is one that is objectively reasonable "in the sense both of efficacious and of proportional to costs." *Keith*, 703 F.3d at 927 (internal quotation marks omitted). If an accommodation would break an employer, it is not reasonable. *Id.* "The reasonableness of a requested accommodation is generally a question of fact." *Id.*

A reasonable accommodation may include "reassignment to a vacant position." 42 U.S.C. § 12111(9)(B); *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 869 (6th Cir. 2007). However, there is no requirement that an employer violate a collective bargaining agreement or create a new position in order to return a disabled employee to work. *Id.*; *Bratten v. SSI Servs., Inc.*, 185 F.3d 625, 634 (6th Cir. 1999). The ADA only requires that an employee be reassigned to an open position for which the employee is qualified, with or without accommodations. *Kleiber*, 485 F.3d at 869. While the proposed letter of understanding between CCRC and the Union offered a way to return Henschel to work as a year-round blade truck driver, that ultimately would have required the Union to remove a more senior employee from his position without assuring him a position at an equal pay-scale. As a result, the Union withdrew from the letter of understanding prior to its formalization by vote. The CBA does not allow the county to unilaterally reassign employees to different positions. In order to return Henschel to work as a year-round blade truck driver, CCRC would have had to transfer a blade truck driver to a different position in violation of the CBA or create an additional year-round blade truck driver position. Under these circumstances, the district court did not err in finding that there was no genuine issue of material fact regarding reassignment and that reassignment was not a reasonable accommodation as a matter of law.

This analysis does not address the question of whether assigning Henschel to an automatic transmission blade truck or grader to plow snow *during the winter* as part of the excavator operator position would have been a reasonable accommodation. The

ADA requires job restructuring of non-essential duties as a reasonable accommodation in appropriate circumstances. *Bratten*, 185 F.3d at 632. The CBA allows CCRC some authority to allocate machinery, such as potentially shuffling blade trucks among their drivers, and assigning Henschel to an automatic-transmission blade truck and moving a current blade truck driver to a manual-transmission spare blade truck during the winter does not involve creating a new position or assigning an employee to a different job. Whether this or another accommodation was reasonable and permissible under the CBA are questions that the district court did not reach.

### IV. Conclusion

For the foregoing reasons, genuine issues of material fact remain regarding whether Henschel is qualified, with or without accommodations, for the excavator operator position. We REVERSE the district court's grant of summary judgment in favor of Clare County Road Commission on the basis that hauling the excavator is an essential function of the excavator operator position; we AFFIRM the district court's determination that reassigning Henschel to a year-long blade truck driver position was not a reasonable accommodation; and we REMAND to the district court to determine if genuine issues of material fact exist regarding whether Henschel was qualified, with or without accommodations, to perform the various functions throughout the year of the excavator operator position.