NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0534n.06

No. 17-4019

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| MARGARET DEPALMA, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| SECRETARY OF THE AIR FORCE, | ) | DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

**FILED**
Oct 25, 2018
DEBORAH S. HUNT, Clerk

**BEFORE: KEITH, CLAY, and NALBANDIAN, Circuit Judges.**

**DAMON J. KEITH, Circuit Judge.** Dr. Margaret DePalma ("Dr. DePalma"), a former United States Air Force employee at the Wright-Patterson Air Force Base ("WPAFB") in Ohio, brought claims for sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. She brought these claims against her employer, Deborah Lee James, Secretary of the Air Force, after she was terminated from her position as a historian. Dr. DePalma alleged that her male supervisor at the Air Force base discriminated and retaliated against her after she filed an internal grievance, and later informal and formal EEOC complaints, against him. The district court granted summary judgment in favor of Defendant and against Dr. DePalma. For the following reasons, we **AFFIRM**.

**BACKGROUND**

**I.      Factual Background**

Dr. DePalma earned her Ph.D. in history, and began her career as a historian at Whiteman Air Force Base in Johnson County, Missouri in 2005, where she worked for five years. In 2010,

Dr. Joseph Marchese ("Dr. Marchese"), lead historian at WPAFB, hired Dr. DePalma to work at WPAFB, in Dayton, Ohio, as a historian in the Air Force Research Lab ("AFRL"). He hired her based on a recommendation he received from a then-current historian in his division.

In Dr. DePalma's job description as an Air Force historian, some of her required tasks included: (1) writing historical narratives to produce professional histories of the AFRL; (2) synthesizing large amounts of written and oral source materials into a coherent, accurate, supportable, and accessible narrative; and (3) providing complete documentation of sources for written materials to justify and defend analyses and conclusions, *inter alia*. In addition, all historians in the AFRL are mandated to adhere to the standards outlined in AFI 84-101. AFI 84-101 is an approximately seventy-three page publication that "provides guidance and procedures for collecting historical data and documentation, preparing historical reports, and providing historical services."

Dr. DePalma worked with at least three other male historians. Dr. DePalma began her employment at the WPAFB around the same time as Dr. Frank Kalesnik ("Dr. Kalesnik"), who was also a historian hired in the AFRL and worked under the same supervisor, Dr. Marchese.[1] He stated, "Dr. Marchese consistently praised the work of Dr. James Aldridge ("Dr. Aldridge") and Mr. Kevin Rusnak ("Mr. Rusnak"), which in my professional opinion, was of no better than average quality." R. 17-1 at PID 278

Dr. DePalma also worked with Dr. Aldridge. He stated, "[M]y experience is that Dr. Marchese is a VERY THOROUGH proofreader and reviewer of all written products that I have produced for the office. I have rarely had a product returned to me without numerous insightful comments and useful suggestions for emendations, where necessary." R. 15-25 at PID 211

---

[1] In November 2012, Dr. Kalesnik transferred out of WPAFB to accept a position as Command Historian with the U.S. Marine Corps.

(emphasis in original). He has no specific knowledge of the events that led to Dr. DePalma's claims of sex discrimination and retaliation.

Mr. Rusnak was also employed in the AFRL History Office, and has worked as a historian under the supervision of Dr. Marchese for 11.5 years (as of January 2014). When asked whether he was treated differently than Dr. DePalma, he stated that when he first began at the AFRL he was subject to "significant" criticism, and that "Dr. Marchese still closely edits my submissions." R. 15-26 at PID 219. When asked about his knowledge of Dr. DePalma's allegation of discrimination, he responded, "I have never been witness to, nor heard mention of, any instances of Dr. Marchese sexually harassing Dr. DePalma or any female member of AFRL/[History Office] or its contractor staff at any time during the 11.5 years I have been in this office." *Id.* at PID 220.

Dr. DePalma received her six-month assessment from Dr. Marchese on May 24, 2011. Her evaluation contained feedback such as (1) "[Dr. DePalma] [r]esearches well," (2) "Interacts well with colleagues to learn about how to become more efficient in job," and (3) "Needs to work on making write-ups more nearly a product of her thought and effort and less nearly that of the authors of original documentation," *inter alia*. R. 15-4 at PID 64-5.

In May 2012, Dr. DePalma and Dr. Kalesnik submitted their respective individual assignments for the 2011 annual history report. Dr. Marchese reviewed both of their assignments, and later that month spoke separately with them detailing that they submitted unoriginal work product, which was unacceptable. Dr. Marchese thereafter issued a separate memorandum to both Dr. DePalma and Dr. Kalesnik, which documented the performance evaluation conversation, and filed it in their respective work folders. Both Dr. Kalesnik and Dr. DePalma voiced disagreement over his assertions that they submitted unoriginal work product, but Dr. Marchese maintained his position and directed both Dr. Kalesnik and Dr. DePalma to revise their submissions.

That same month, both Dr. DePalma and Dr. Kalesnik filed workplace grievances with Col. Eugene Henry ("Col. Henry"), Dr. Marchese's superior and Chief of Staff for the Air Force Research Library, requesting that the memoranda be removed from their employee work folders. Col. Henry granted Dr. DePalma and Dr. Kalesnik's requests, and ordered the memoranda be removed from their respective work folders. In Col. Henry's grievance decision letter, no rationale for the granting the request is mentioned.

For the remainder of the year, Dr. DePalma continued to receive negative feedback for the same reasons as stated above. For example, in November 2012, after submitting a draft outline for her portion of the 2012 annual history report, Dr. DePalma received feedback from Dr. Marchese stating that her work product was again unacceptable because it was copied. *See* R. 15-8 at ¶ 6, PID 87 ("[H]e called me into his office and handed me a memo stating the chapters were 'unacceptable' because they were 'copied.'"). As rationale, Dr. Marchese stated that certain footnotes in Dr. DePalma's writing did not substantiate the assertions proffered, she inconsistently utilized footnotes, and her writing included factual errors regarding the substance of the chapter, *inter alia*. After receiving this feedback, Dr. DePalma requested a "more exact accounting of the problems [Dr. Marchese] found in the draft chapters." Less than a week later, Dr. Marchese provided Dr. DePalma with a breakdown of the paragraphs that were deficient and in need of revision.

In January 2013, in her annual performance assessment, Dr. DePalma continued to receive negative feedback, alleging that she was still not adequately citing sources and/or creating original narratives. Dr. Marchese followed up with Dr. DePalma via email and later memorandum, where he outlined some of his major concerns with her work product. *See* R. 15-15 Feb 4, 2013 Email from Dr. Marchese to Dr. DePalma, PID 122 (stating "a series of paragraphs composed very

largely, with attribution or not, of material taken directly from source documents. These include: …;" "you still have not demonstrated an ability to read, understand, and analyze source documents – that are not copied or hidden – and then write in your own words, a coherent historical narrative."). Dr. DePalma filed a second internal grievance, that unlike the first, was not removed from her record after review by a group of several high-level managers.

Dr. Marchese's assertion that Dr. DePalma continued to submit substandard work product continued into March and April 2013. On April 19, 2013, Dr. Marchese called Dr. DePalma into his office to inform her that the weekly activity reports she submitted were unacceptable. Dr. Aldridge was present for this meeting. Immediately after this meeting, Dr. DePalma sent an email to herself memorializing her belief that Dr. Marchese was planning to give her a negative performance review and then place her on a "Performance Improvement Plan."

On April 30, 2013, eleven days later, Dr. DePalma filed an informal complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging that Dr. Marchese was discriminating against her based on her sex. On May 8, 2013, a Meeting of Managers ("MoM") consisting of five senior Air Force officials, convened and decided that based on Dr. DePalma's "lack of contribution since 1 October 2012" she would be placed on a Contribution Improvement Plan ("CIP"), aimed at increasing her productivity. Dr. DePalma's CIP began on May 15, 2013 and ended on July 31, 2013, when an essay she was assigned to complete as a part of the CIP would be assessed by the MoM. Depending on the results of that essay assessment and other factors, Dr. DePalma could either continue her employment or be recommended for termination.

On June 24, 2013, while on her CIP, Dr. DePalma filed a formal EEOC complaint, alleging that Dr. Marchese and Col. Jon Yost[2] placed her on the CIP in retaliation for filing the informal

---

[2] Col. Yost replaced Col. Henry upon Col. Henry's retirement.

EEOC complaint that alleged sex discrimination. Dr. DePalma completed her CIP essay, and upon review of her essay and other "contribution factors," a MoM determined that she failed to successfully complete her CIP, due in large part to her essay suffering from the same defects of her previous writing assignments. After receiving a notice of removal in November 2013, Dr. DePalma was terminated from her position as an Air Force historian on March 26, 2014.

## II.      Procedural Background

Dr. DePalma filed a Complaint in the U.S. District Court for the Southern District of Ohio on August 26, 2015.[3] On May 11, 2017, the Secretary of the Air Force filed a Motion for Summary Judgment on both claims, arguing that Dr. DePalma failed to establish a prima facie case of discrimination and retaliation. The district court granted summary judgment in favor of Defendant on August 1, 2017, and Dr. DePalma timely appealed to this court on September 27, 2017.

## DISCUSSION

## III.     Standard of Review

This Court reviews a district court's grant of summary judgment de novo and considers the facts and any inferences drawn in the light most favorable to the non-moving party. *Henschel v. Clare Cty. Rd. Comm'n*, 737 F.3d 1017, 1021–22 (6th Cir. 2013). Summary judgment is appropriate when there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a). The burden falls on the moving party to demonstrate that no genuine issues of material fact exist. *See*

---

[3] Dr. DePalma timely filed her Complaint in the district court, even though she filed it on the 91st day after the Final Agency Decision ("FAD") was issued. The EEOC issued its FAD on May 28, 2015. EEOC complainants generally have ninety days to file an action in the district court after "receipt" of the final agency decision. *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147 (1984) (*per curiam*). The Sixth Circuit has resolved that the ninety-day limitations term begins running on the fifth day following the EEOC's mailing of its FAD to the claimant's record residential address, by virtue of a presumption of actual delivery and receipt within that five-day duration, unless the plaintiff rebuts that presumption with proof that he or she did not *receive* notification within that period. *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc*., 209 F.3d 552, 557 (6th Cir. 2000). As the record includes no evidence of an objection to the timeliness of Dr. DePalma's Complaint, and the record contains no evidence of the contrary, this Court finds that Dr. DePalma's filing of her Complaint in the district court on the 91st day after the FAD was issued is timely under our precedent.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The central inquiry at the summary judgment stage is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

## IV.      Analysis

The district court determined that Dr. DePalma could not establish a prima facie case of sex discrimination because she could not show that another similarly situated employee outside of her protected class was treated more favorably with respect to receiving negative feedback on work product.  The court also rejected Dr. DePalma's retaliation claim, ruling that she had failed to establish a causal connection between her submission of an EEOC claim and the MoM's decision to place her on a CIP and eventually terminate her employment.

### a.   Governing Law

Title VII prohibits an employer from discriminating against any person regarding the terms, conditions, or privileges of employment because of sex, and from "discriminat[ing] against any of [its] employees ... because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. §§ 2000e–2(a)(1); 2000e–3(a).  To establish a claim of discrimination under Title VII, a plaintiff must present either direct or circumstantial evidence of discrimination by an employer.  *Wheat v. Fifth Third Bank*, 785 F.3d 230, 237 (6th Cir. 2015). Where, as in Dr. DePalma's case, a plaintiff offers no direct evidence of discrimination by the employer, courts apply the burden-shifting inquiry set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).

For both a sex discrimination and retaliation claim, the first step of *McDonnell Douglas* requires a plaintiff to establish a prima facie case.  *Jackson v. VHS Detroit Receiving Hosp., Inc.*,

814 F.3d 769, 776 (6th Cir. 2016); *Fuhr*, 710 F.3d at 674. Upon proof of a prima facie case, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the employment decision. *Wheat*, 785 F.3d at 237; *see also Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 653 (6th Cir. 2012). If the employer provides such a reason, the burden shifts back to the plaintiff to show that "the legitimate reasons offered by the employer were not its true reasons, but rather were pretext for unlawful discrimination." *Ondricko*, 689 F.3d at 653. We have "held consistently that a plaintiff's burden of establishing a prima facie case is not an onerous one." *Wheat*, 785 F.3d at 237.

   b. Sex Discrimination

To establish a prima facie case of sex discrimination, Dr. DePalma must show that she was: (1) a member of a protected class; (2) subjected to an adverse action; (3) qualified for the job; and (4) that another similarly situated employee, not in the protected class, was treated more favorably. *Jackson*, 814 F.3d at 776. In this case, there is no dispute that the first three elements are satisfied. To be considered similarly situated, the employee "must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

On appeal, Dr. DePalma argues, "[w]ith all due respect to the District Court, Appellant submits that such conclusion is simply wrong, especially in the context of a Motion for Summary Judgment, where the evidence and all reasonable inferences flowing therefrom must be construed in a light most favorable to Dr. DePalma." Appellant Br. at 12. She argues that the following evidence raises a genuine issue of material fact as to whether her work product was held to a higher standard than her male counterparts: (1) her education and four prior years of experience as an Air

Force historian without a negative performance evaluation; (2) Dr. Marchese's alleged disparagement of Dr. DePalma's ability to understand the relevant science and technologies; (3) Dr. Kalesnik's receipt of a higher bonus than she received; (4) Dr. Kalesnik's testimony that he witnessed Dr. Marchese treating Dr. DePalma differently and believed it was due to her sex; and (5) Mr. Rusnak's work being accepted without question while she was accused of plagiarism. *Id.* at 13.

Our "duty to view the facts in a light most favorable to the nonmovant does not require or permit the court to accept mere allegations that are not supported by factual evidence." *Chappell v. City of Cleveland*, 585 F.3d 901, 906 (6th Cir. 2009). "To make out a *genuine* issue of material fact, [the] plaintiff must present significant probative evidence tending to support her version of the facts, *evidence* on which a reasonable jury could return a verdict for her." *Id.* at 913 (emphasis in original). We will address the evidence Dr. DePalma proffered to support her claim that she received unequal treatment in turn.

First, Dr. DePalma claims that her education and four prior years of experience as an Air Force Historian at Whiteman Air Force Base without a negative performance evaluation supports her allegation that her work product received excessive criticism from Dr. Marchese, criticism that her male colleagues did not receive. But, her previous record does not imply that she would have the same experience in another division, with different subject matter, and a different supervisor. This evidence does not support her allegation that she was treated differently than her male counterparts.

Second, Dr. DePalma alleged that she was treated differently because Dr. Marchese made disparaging comments regarding Dr. DePalma's ability to understand the relevant science and technologies. Dr. DePalma's allegation is without any supporting evidence, and Dr. DePalma in

fact admitted that she "was somewhat new with science and technology issues, and would frequently ask Marchese questions about these matters." R. 17 at PID 266. Nor does Dr. DePalma assert that Dr. Marchese did not make similar comments towards her male colleagues. As such, Dr. DePalma's assertion cannot withstand a motion for summary judgment. *Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008) ("Conclusory assertions, supported only by Plaintiff's own opinions, cannot withstand a motion for summary judgment.").

Third, as evidence that she was treated differently than her male counterparts, Dr. DePalma claims that on at least one occasion, her male counterpart, Dr. Kalesnik, received a bonus that was double the amount she received. Dr. DePalma does not have the requisite knowledge to substantiate this accusation, and the record is devoid of support for this allegation. Dr. Kalesnik did not mention the amount of his bonus in his affidavit or declaration. When asked about this allegation in her deposition, Dr. DePalma further admitted to not having any knowledge of the contents of her colleague's performance evaluations. Accordingly, the evidence does not support her allegation that she was treated differently than her male counterparts.

Fourth, Dr. DePalma proffers Dr. Kalesnik's testimony that he witnessed Dr. Marchese treating Dr. DePalma differently than he treated Dr. Aldridge and Mr. Rusnack, as well as Dr. Kalesnik's testimony that he believed this differential treatment was due to Dr. DePalma's sex, as supporting evidence of disparate treatment. While this is some evidence of disparate treatment based on sex, it is not enough to create a genuine issue of material fact. Dr. Kalesnik had no personal knowledge about Dr. Marchese's motivation and his testimony was only speculation. Moreover, Dr. DePalma testified to a personality conflict between herself and Dr. Marchese. R. 17-5, 75:16-15, PID 546; *see also* R. 17-5, 65:6-16, PID 536 (when asked about why she believed Dr. Marchese would actively recruit her to work in his office if he did not like women, Dr.

DePalma stated, "[h]e thought I would go along with his ideas and would be nonaggressive, but he got more than he bargained for."). Considering the clear personality conflict between Dr. DePalma and Dr. Marchese, Dr. Kalesnik's conclusory testimony alone does not create a genuine issue of material fact as to whether Dr. Marchese's treatment toward Dr. DePalma, a subordinate employee, was based on Dr. DePalma's gender, and not some other factor. *See Salt Lick Bancorp v. F.D.I.C.*, 187 F. App'x 428, 444 (6th Cir. 2006) (statements in affidavit and deposition testimony insufficient to make out a genuine issue of material fact where they only consist of "conclusory allegations; unfounded conjecture; [and] statements demonstrating a lack of personal knowledge…"). This Court finds that Dr. Kalesnik's speculation on the motivation behind Dr. Marchese's treatment of Dr. DePalma, if taken as true, does not create a genuine issue of material fact for Dr. DePalma's claim that she was treated differently than her male counterparts due to her gender, without other supporting evidence.

Fifth, Dr. DePalma asserts that Dr. Marchese accepted Mr. Rusnak's work product without question, while she was accused of plagiarism. However, Mr. Rusnak stated that he was subject to ongoing scrutiny of his work product. Although he mentions that he now notices "fewer significant variances" from his submitted work product and Dr. Marchese's expectations, he notes that: (1) he has worked with Dr. Marchese for over a decade (as of January 2014); and (2) he received more substantial feedback "during [his] first few annual history cycles," when he was new to the office. Due to the fact that Mr. Rusnak possesses direct evidence of the feedback he received from Dr. Marchese, Dr. DePalma's speculation of his performance does not create a genuine issue of material fact that her work product was subject to greater scrutiny than Mr. Rusnak's.

The record supports the finding that Dr. DePalma's proffered evidence did not create a genuine issue of material fact that Dr. Marchese treated Dr. DePalma differently than her male counterparts, regardless of the particular male employee she is compared to. For instance, if compared to Dr. Kalesnik, both Dr. DePalma and Dr. Kalesnik received negative feedback on their assessments for not producing original written content. Dr. DePalma acknowledged in her response to Defendant's summary judgment motion that "[n]early every criticism of Plaintiff's work performance was predicated on Plaintiff's alleged plagiarism[.]" Yet, comparing Dr. DePalma and Dr. Kalesnik, they were *both* formally reprimanded, and Col. Henry removed *both* of their written reprimands from their respective internal files. This evidences equal treatment, not disparate treatment. On the other hand, if compared to Mr. Rusnak, Mr. Rusnak made clear that even though he had worked under Dr. Marchese for over a decade, his writing assignments still were still "closely edited." Dr. DePalma's writing assignments were also closely edited.

Considering the above legal standards and factual scenario, Dr. DePalma has not set forth a prima facie case of sex discrimination because she has not proffered sufficient evidence to create a genuine issue of material fact that her male counterparts were treated differently. To the extent she argues that she did meet this burden, Defendant also met its burden in articulating a legitimate, nondiscriminatory reason for giving Dr. DePalma negative performance evaluations, one that she has not sufficiently rebutted. Defendant provided evidence that Dr. Marchese and every historian in AFRL was required to abide by AFI 84-101, which outlines *mandatory* Air Force standards for written work product. Defendant proffered further substantial evidence that Dr. DePalma was not abiding by those mandatory standards. The record supports the finding that no reasonable jury would return a verdict for Dr. DePalma for her claim of Title VII sex discrimination under this factual scenario. *Anderson*, 477 U.S. 242.

c. Retaliation

To move forward on her Title VII retaliation claim, Dr. DePalma has the initial burden of establishing a prima facie case of retaliation, which consists of four elements: (1) the plaintiff engaged in activity protected under Title VII; (2) the exercise of plaintiff's protected rights was known to the defendant; (3) the defendant subsequently took an adverse employment action against the employee "or the employee was subjected to severe or pervasive retaliatory harassment by a supervisor;" and (4) there was a causal connection between the protected activity and the adverse employment action or harassment. *Fuhr*, 710 F.3d at 674. Our caselaw explains that a causal connection is established when the plaintiff "proffer[s] evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 588 (6th Cir. 2009) (quoting *E.E.O.C. v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997)). Elements one and three are undisputed, and although the parties dispute element two, this Court turns its attention to element four, as it is the basis for a finding that Dr. DePalma has not satisfied her burden of establishing a prima facie case of Title VII retaliation.

On appeal, in relation to the causal connection argument, Dr. DePalma argues that the district court gave inappropriate weight to Defendant's allegation that her work product was unacceptable, especially in light of the district court's recognition of the temporal proximity between Dr. DePalma's filing of her EEOC claim and her placement on a CIP.

The district court concluded that summary judgment was appropriate because Dr. DePalma's failure to pass the CIP was a legitimate, non-discriminatory reason to terminate her employment. Dr. DePalma can meet her burden on this step of the *McDonnell Douglas* test by showing that Defendant's proffered reasons: (1) have no basis in fact; (2) did not actually motivate the adverse action; or (3) were insufficient to explain the adverse action. *See Loyd v. St. Joseph*

*Mercy Oakland*, 766 F.3d 580, 590 (6th Cir. 2014) (citing *Wexler v. White's Fine Furniture*, *Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (en banc)).  A plaintiff must produce "sufficient evidence from which the jury could reasonably reject [the defendant's] explanation and infer that the defendant[ ] ... did not honestly believe in the proffered nondiscriminatory reason for its adverse employment action." *Braithwaite v. Timken Co.*, 258 F.3d 488, 493–94 (6th Cir. 2001).

Dr. DePalma has not produced sufficient evidence that would allow a jury to reasonably reject Defendant's claim that Dr. DePalma was terminated because of her substandard work product.  At the district court, Dr. DePalma put forth two arguments regarding her retaliation claim and alleged pretext for her termination.  She argued that her placement on the CIP, and later termination, was in retaliation to her informal EEOC complaint.  Alternatively, she argued that every adverse action after her first grievance against Dr. Marchese was in retaliation of Dr. DePalma filing that first grievance and it being removed from her employment file.  To support these claims, Dr. DePalma points to "the evidence of Dr. DePalma's years of training and experience, coupled with the evidence that she was being held to a different and higher standard than her male counterparts…"  Appellant Br. at 15.  This Court finds this rationale unpersuasive.

Dr. DePalma's first argument, that her informal EEOC complaint triggered her placement on the CIP, is unsupported by the record.  The record includes an email that Dr. DePalma sent to herself after a meeting with Dr. Marchese, where she memorialized her realization that Dr. Marchese intended to eventually place her on a CIP after he told her that her work product was "unacceptable."  The fact that Dr. DePalma believed Dr. Marchese had already formed the intent to implement disciplinary proceedings against her, *before* she filed her informal EEOC complaint, defeats her argument that her EEOC complaint was the reason for adverse employment decisions.

It also defeats her argument that there was temporal proximity between her EEOC claim and her placement on the CIP. She has not produced sufficient evidence to support either argument.

Dr. DePalma's alternative argument, that the triggering event for her alleged employment discrimination and later termination was the filing of her first internal grievance, is likewise unsupported by the record. Even if the triggering event for Dr. DePalma's retaliation claim was the initial internal grievance she filed against Dr. Marchese, in order to establish the requisite causal connection, she would have had to present evidence sufficient to raise an inference that she would not have been subject to any of the negative evaluations she received, which eventually led to the CIP, had she not filed her original grievance and it was not resolved in her favor. Dr. DePalma has not met this burden, and when viewed in the light most favorable to her, the record contains ample evidence that the quality of her work product, not her filing of grievances, caused her eventual termination. Not only did Dr. Marchese meticulously review Dr. DePalma's – and every other historian's – assignments, but he also maintained detailed notes, *ad nauseum*, that provided Dr. DePalma with precise rationale as to why her assignments were not acceptable under AFI 84-101, and how she could improve. Most importantly, Dr. DePalma's six-month evaluation, which she received approximately a full year before she filed her first internal grievance against Dr. Marchese, included references to Dr. Marchese's finding that she submitted unoriginal and uncited work product. As such, she has not provided this Court with evidence that the negative feedback she received and eventual termination was pretext for either discrimination or retaliation.

## CONCLUSION

Upon a thorough review of the record, Dr. DePalma has not overcome the burden required to survive Defendant's Motion for Summary Judgment on both claims. She has not provided evidence to prove that a similarly situated male colleague was treated more favorably than she

was, or evidence that would rebut and overcome Defendant's proffered reason – Dr. DePalma's consistent substandard work product – for terminating her employment.  For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment in favor of Defendant and against Plaintiff on both counts.